UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ISIDRO ALCALA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| EMHART INDUSTRIES, INC., BLACK & DECKER CORPORATION, UNITED SHOE MACHINERY CORPORATION, USM INTERNATIONAL and USM CORPORATION,[1] | ) ) ) ) ) ) Case No. 04 C 0205 |
| Defendants. | ) ) ) |
| EMHART INDUSTRIES, INC., | ) |
| Third-Party Plaintiff, | ) ) ) |
| v. | ) ) |
| LAKIN GENERAL CORPORATION, | ) ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On April 23, 2003, Plaintiff Isidro Alcala ("Alcala") filed a products liability action based on negligence against Defendant Emhart Industries, Inc. ("Emhart") in the Circuit Court of Cook County, Illinois seeking damages for personal injuries. On November 21, 2003, Emhart filed a Third-Party Complaint against Alcala's employer, Defendant Lakin General Corporation ("Lakin") for contribution under the Illinois Joint Tortfeasor Contribution Act. *See* 740 ILCS

---

[1] On March 7, 2005, the Court granted the parties' agreed motion to dismiss certain defendants with prejudice. The Court thus terminated United Shoe Machine Corporation, Black & Decker Corporation, USM International, and USM Corporation from this action. (R. 29-1.)

100/1 *et seq.* On January 1, 2004, Emhart removed this action to federal court pursuant to 28 U.S.C. § 1441(a) based on diversity jurisdiction. Before the Court is Emhart's Motion for Summary Judgment against Alcala pursuant to Federal Rule of Civil Procedure 56(c) and Emhart's Motion to Strike certain portions of Alcala's expert witness' affidavit. Also before the Court is Lakin's Motion for Summary Judgment against Emhart also pursuant to Rule 56(c). For the following reasons, the Court denies Emhart's Motion for Summary Judgment and grants in part and denies in part Emhart's Motion to Strike. The Court also denies Lakin's Motion for Summary Judgment.

## BACKGROUND

On April 24, 2001, Lakin employed Alcala as a machine operator. (R. 41-1, Emhart's Local Rule 56.1 Stmt., intro. ¶.) Emhart is a corporation which has succeeded to the liabilities, if any, of Turner Tanning Machinery Company ("Turner Tanning") with respect to the design and manufacture of a belt knife splitting machine which Alcala was operating at the time of his injury. (R. 28-1, Stipulation of Facts.) Turner Tanning was in the business of making various machines for the tanning of leather, including the splitter machine at issue. (R. 60-1, Pl.'s Local Rule 56.1 Addl. Stmt. ¶ 1.) The Turner Tanning splitters' basic design was for leather, and Turner Tanning converted that design into rubber splitters. (*Id.* ¶ 2.)

At the time of his injury, Alcala was operating a machine bearing a nameplate of the Turner Tanning Machinery Company, Class R, serial number 149 (hereinafter the "Turner 149"). (R. 41-1, Emhart's Stmt. Facts ¶ 1.) The exact date that Turner Tanning manufactured the Turner 149 is unknown, although according to undisputed deposition testimony, the splitter was made around the First World War. (*Id.* ¶¶ 2, 3; R. 60-1, Pl.'s Stmt. Facts ¶ 13.) After Turner

2

Tanning manufactured and sold the Turner 149, it underwent some modifications. (R. 41-1, Emhart's Stmt. Facts ¶ 5.) The first purchaser of the Turner 149 is unknown. (*Id*. ¶ 4.) Lakin, the present owner of the Turner 149, purchased the splitter sometime before 1971. (R. 52-1, Emhart's Rule 56.1 Addl. Facts, ¶ 7.) Lakin designed and installed the splitter's pin guarding system that was present at the time of Alcala's injury. (R. 52-1, Emhart's Addl. Facts ¶ 7.)

Lakin is in the business of converting used tires into rubber parts and owns fourteen Turner Tanning splitters in its Chicago plant. (R. 60-1, Pl.'s Stmt. Facts ¶ 4.) At the time Alcala was using the Turner 149, he was splitting rubber tires. (R. 41-1, Emhart's Stmt. Facts ¶ 10.) On April 24, 2001, Alcala was feeding a tire tread into the Turner 149 when his hand was injured. (R. 60-1, Pl.'s Stmt. Facts ¶ 5.) Specifically, earlier in the day Alcala had been feeding tire treads that were greasy and some of the grease had gotten into the splitter's in-feeding rollers. (*Id*. ¶ 6.) At some point, a tire tread did not go through the rollers. (*Id*.) After the tire tread stopped moving, Alcala attempted to push the tire tread through the splitter. (*Id*. ¶ 7.) As Alcala pushed, the rollers gripped the tread and pulled his fingers, hand, and forearm into the rollers and knife. (*Id*. ¶ 8.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party

seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255. The existence of a factual dispute alone is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004).

## ANALYSIS

**I.      Emhart's Motion for Summary Judgment**

Alcala's products liability action sounds in negligence, not strict liability.[2] Because this is a negligent defective design and manufacture case, the Court focuses on the manufacturer's conduct, in this case Turner Tanning. *Blue v. Environmental Eng'g, Inc.,* 215 Ill.2d 78, 95, 293 Ill.Dec. 630, 828 N.E.2d 1128 (2005). To establish a negligence claim for the defective design and manufacture of a product, Alcala must show either that (1) Turner Tanning "deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed," or (2) Turner Tanning "knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous" and yet "failed to warn of its dangerous propensity." *Id*. at 96 (citing Restatement (Second) of Torts § 398, at 336 (1965)); *see also Carrizales v. Rheem Mfr. Co.,* 226 Ill.App.3d 20, 36-37, 168 Ill.Dec. 169, 589 N.E.2d 569

---

[2] Alcala is time-barred from bringing a strict liability claim against Emhart under the applicable limitations period. *See* 735 ILCS 5/13-213(b).

4

(Ill.App.Ct. 1991). Alcala must also establish that the alleged defective condition existed at the time the product left the manufacturer's control. *Fuesting v. Zimmer, Inc.,* 421 F.3d 528, 532 (7th Cir. 2005) (citing *Carrizales,* 226 Ill.App.3d at 36).

### A. Deviation from Standard of Care

The Court first turns to whether Turner Tanning deviated from the standard of care that other manufacturers in the industry followed at the time that it designed the Turner 149. *See Blue,* 215 Ill.2d at 96; *Carrizales,* 226 Ill.App.3d at 36-37. To support this argument, Alcala presents the expert opinion affidavit of Professor Donald Lemke, who averred that at the time Turner Tanning manufactured the splitter, other manufacturers had guarding devices for the nip points on their splitters. (R. 60-1, Pl.'s Stmt., Ex. A, ¶ 13.) Also in his affidavit, Dr. Lemke opined that at the time Turner Tanning manufactured the splitter, no guards were on the splitter that would prevent an operator's hands from going into the nip point. (*Id.,* Ex. A, ¶ 10.) Dr. Lemke based this opinion on two drawings of the Turner splitter; another witness' testimony that he had never seen a guard that would prevent an operator's hands from going into the nip point; and a Turner Tanning sales brochure, instruction book, and catalogue. (*Id.*)

#### 1. Standard of Care

Emhart moves to strike paragraph 13 of Dr. Lemke's expert affidavit concerning the standard of care industrial manufacturers exercised at the time Turner Tanning manufactured the Turner 149. Emhart argues that Dr. Lemke's opinion regarding the standard of care is a new opinion that Dr. Lemke did not disclose in his expert report or in his deposition testimony. Because Alcala filed Dr. Lemke's expert affidavit in response to Emhart's Motion for Summary Judgment, Emhart argues that the Court should strike paragraph 13 of Dr. Lemke's affidavit

pursuant to Federal Rule of Civil Procedure 37(c)(1).[3]

As the Seventh Circuit instructs, "exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). The determination whether a violation of Federal Rule of Civil Procedure 26(a) is justified or harmless is entrusted to the broad discretion of the district court. *Keach v. U.S. Trust Co.,* 419 F.3d 626, 640 (7th Cir. 2005); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

The Court first turns to whether Alcala failed to comply with Rule 26(a)(2)(b) which requires that an expert report must contain a "complete statement of all opinions to be expressed and the basis and reasons therefor." *See Musser,* 356 F.3d at 758. Alcala contends that it complied with Rule 26(a)(2)(b) because Dr. Lemke's standard of care as averred in his affidavit is consistent with his expert report. Dr. Lemke's expert report does not specifically articulate the standard of care. The report, however, discusses that the reasonable care in the design of the splitter includes guarding, that Turner Tanning should have installed guards to reduce or eliminate the risk of an operator's fingers being caught in the nip point, and that reasonably careful manufacturers should have recognized the risk of injury. (R. 64-1, Def.'s Mot. to Strike, Ex. A.) As such, Dr. Lemke's standard of care opinion is consistent with his earlier disclosed expert report and put Emhart on notice of the opinion that reasonable manufacturers guarded the splitter's nip-point at the time Turner Tanning manufactured the splitter.

Even though Alcala failed to disclose the exact standard of care before the close of

---

[3] The Court also notes that Emhart relies on Dr. Lemke's late-filed affidavit in its response to Lakin's Motion for Summary Judgment, and thus some of Emhart's arguments appear to be disingenuous.

discovery, Alcala's failure is harmless. *See Musser*, 356 F.3d at 758. To make this determination, the Court considers the surprise or prejudice to Emhart, Alcala's ability to cure any prejudice, the likelihood of disruption to the trial, and whether there was bad faith in not producing the evidence at an earlier date. *See Keach,* 419 F.3d at 640; *David,* 324 F.3d at 857.

Here, Dr. Lemke's affidavit did not surprise or prejudice Emhart because Emhart has the opportunity to undertake countermeasures, such as retaining a rebuttal expert or holding additional depositions of Dr. Lemke concerning the standard of care.[4] *See Musser*, 356 F.3d at 757-58. In addition, this is not a situation where Emhart has no time to take such countermeasures because the Court has yet to set a trial date, and thus there is no disruption to the trial. *See Sherrod v. Lingle,* 223 F.3d 605, 613 (7th Cir. 2000). Further, there is no evidence in the record that Alcala acted in bad faith by disclosing Dr. Lemke's exact standard of care opinion after the close of discovery. *See Keach*, 419 F.3d at 640-41. Accordingly, the Court, in its discretion, concludes that Alcala's failure to disclose Dr. Lemke's standard of care opinion is harmless.

In further support of the Court's conclusion is the principle that if the sanction of exclusion under Rule 37(c)(1) results in dismissal of an action, the sanction must be proportionate to the violation. *Musser,* 356 F.3d at 756. Excluding Dr. Lemke's standard of care opinion would result in dismissing this claim under Alcala's first theory of liability which is disproportionate relative to Alcala's failure to timely disclose the exact standard of care, especially because the standard of care is consistent with Dr. Lemke's earlier filed expert report.

---

[4] The Court is extending expert discovery until January 27, 2006 solely on the issue of Dr. Lemke's standard of care opinion.

*See Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.,* 138 F.Supp.2d 1088, 1094-95 (N.D. Ill. 2001) (excluding sole evidence on causation disproportionate to failure to submit expert report); *see also Dotson v. Bravo,* 321 F.3d 663, 667 (7th Cir.2003) (dismissal under Rule 37 harsh sanction). Furthermore, as discussed in detail below, excluding Dr. Lemke's late-filed affidavit could result in the dismissal of Emhart's Third-Party Complaint. *See Musser,* 356 F.3d at 759 (in normal course of events, justice dispensed by hearing case on the merits). Thus, the Court, in its discretion, will not exclude paragraph 13 in Dr. Lemke's affidavit under Rule 37(c)(1).[5]

### 2. Deviation

Emhart also moves to strike paragraph 10 of Dr. Lemke's affidavit because the basis of his opinion that the Turner 149 did not have a guarding device when Turner Tanning manufactured the splitter is a "non-expert conclusion drawn from certain facts, a conclusion which can be drawn (or not drawn) just as easily by the fact finder." (R. 64-1, Def.'s Mot. Strike, at 7.) The Court agrees. Dr. Lemke's opinion does not involve the application of scientific, technical, or other specialized knowledge as required under Federal Rule of Evidence 702. "Federal Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the 'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'" *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509

---

[5] Emhart also challenges Dr. Lemke's use of reference books to assist him in determining the standard of care of industrial machinery manufacturers in the late 1800's and early 1900's. Emhart, however, does not explain how these materials are inappropriate under Federal Rule of Evidence 703, nor does Emhart cite legal authority supporting any such claim.

U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). Specifically, Dr. Lemke's conclusion that there was no guard device at the nip point at the time Turner Tanning designed and manufactured the splitter is not an opinion based on his knowledge and experience as mechanical engineer. Instead, it is a conclusion drawn from facts in the record, and thus is a question for the jury. Therefore, the Court grants Emhart's motion to strike paragraph 10 of Dr. Lemke's affidavit.

Nevertheless, Alcala has set forth competent evidence that a raises genuine issue of material fact whether Turner Tanning deviated from the standard of care that other manufacturers in the industry followed at the time it designed the Turner 149. *See Blue,* 215 Ill.2d at 96; *Carrizales,* 226 Ill.App.3d at 36-37.

### B. Failure to Warn of Dangerous Propensity

Next, Alcala argues that Turner Tanning knew or should have known through the exercise of ordinary care that the Turner 149 was unreasonably dangerous and that Turner Tanning did not warn of the splitter's dangerous propensities. *See Blue,* 215 Ill.2d at 96; *Carrizales,* 226 Ill.App.3d at 36-37. Emhart does not contest Alcala's argument that Turner Tanning knew or should have known that the Turner 149 was unreasonably dangerous, thus the Court turns to whether Alcala has established a genuine issue of material fact concerning warnings of the splitter's dangers.

Alcala bases his argument that Turner Tanning failed to warn of the splitter's dangerous propensity on Turner Tanning's sales brochure, instruction book, and catalogue, which did not warn of the nips point's danger or instruct operators to avoid the nip point. Alcala also contends that the pictures of the splitters in those materials do not show any warning labels, decals, or

9

placards.

Emhart contends that Alcala's argument must fail because he cannot prove whether the Turner 149 had warning labels, markings, or wording at the time Turner Tanning manufactured the splitter. In addition, Emhart argues that there is no evidence whether any manual, instruction book, or other written material that contained warnings accompanied the splitter when it left Turner Tanning's control. At this procedural posture, Alcala is not required to prove a negative, namely, that Turner Tanning did not provide any warnings concerning the splitter. Instead, Alcala must rebut Emhart's contention that there is no genuine issue of material fact concerning the warning labels with definite, competent evidence. *See Butts,* 387 F.3d at 924. Alcala has done so by setting forth the various Turner Tanning materials that do not warn of the nip point's danger, and thus a genuine issue of material fact exists as to the warnings.

Accordingly, the Court denies Emhart's Motion for Summary Judgment.

## II.     Lakin's Motion for Summary Judgment

In its Third-Party Complaint, Emhart alleges that Lakin was negligent and thus is seeking contribution from Lakin pursuant to the Illinois Joint Tortfeasor Contribution Act ("Contribution Act"). *See* 740 ILCS 100/1 *et seq*. To allege a right of contribution under the Contribution Act, (1) the third party and the defendant must both be subject to liability in tort to the plaintiff, and (2) their liability must arise out of the same injury. *Alper v. Altheimer & Gray,* 257 F.3d 680, 684 (7th Cir. 2001) (citing *People v. Brockman* (*Brockman* II), 148 Ill.2d 260, 268, 170 Ill.Dec. 346, 592 N.E.2d 1026 (1992)). The Contribution Act focuses "on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss." *People v. Brockman* (*Brockman* I), 143 Ill.2d 351, 374,

158 Ill.Dec. 513, 574 N.E.2d 626 (1991) (citation omitted).

To prevail in a negligence action under Illinois law, a plaintiff must establish that (1) the defendant owed a duty of care, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff's injuries. *Adams v. Northern Ill. Gas Co.,* 211 Ill.2d 32, 43, 284 Ill.Dec. 302, 809 N.E.2d 1248 (2004). "The existence of a duty is a question of law for the court to decide; however, the issues of breach and proximate cause are factual matters for a jury to decide provided there is a genuine issue of material fact regarding those issues." *Id.* at 43-44 (internal citations omitted). Under Illinois law, an employer has a duty to use ordinary care to provide its employees with a reasonably safe workplace. *Pempek v. Silliker Lab., Inc.,* 309 Ill.App.3d 972, 982, 243 Ill.Dec. 500, 723 N.E.2d 803 (Ill.App.Ct. 1999).

Here, Emhart contends that Lakin negligently guarded the splitter's point of operation and failed to properly adjust the guard to prevent Alcala's hand from entering the point of operation. The parties do not dispute that Lakin designed and installed the pin guarding system that was on the splitter at the time of Alcala's injury. (R. 52-1, Emhart's Addl. Facts ¶ 7.) In support of its argument that Lakin was negligent, Emhart relies on Alcala's expert witness, Dr. Lemke, who opined that Lakin's attempts to place guards at the point of operation were not adequate and that Lakin raised a horizontal bar on the guard that was too high at the time of the accident. (R. 52-1, Emhart's Addl. Facts, ¶¶ 9, 10.) Lakin, on the other hand, argues that because Emhart did not properly disclose Dr. Lemke as one of its experts in compliance with Rule 26(a)(2)(A), Emhart cannot rely on Dr. Lemke's affidavit in support of its Motion for Summary Judgment.

As discussed above, the Court must determine whether Emhart's failure to disclose Dr.

Lemke as its own witness is justified or harmless. *See Musser*, 356 F.3d at 758. In determining whether this non-disclosure is harmless, the Court considers any prejudice to Lakin, the ability to cure the prejudice, the likelihood of disruption to the trial, and whether there was bad faith in not disclosing Dr. Lemke earlier. *See David,* 324 F.3d at 857.

Here, Emhart's failure to disclose Dr. Lemke does not prejudice Lakin because Lakin knew Dr. Lemke was Alcala's expert witness and had already taken Dr. Lemke's deposition testimony. Lakin also has the opportunity to undertake countermeasures, such as retaining a rebuttal expert because the Court has extended expert discovery until January 27, 2006. *See Musser*, 356 F.3d at 757-58. Because the Court has yet to set a trial date, there is no disruption to the trial and there is no evidence in the record that Emhart acted in bad faith by failing to disclose Dr. Lemke as its own expert witness. *See Keach*, 419 F.3d at 640-41. Therefore, the Court, in its discretion, concludes that Emhart's failure to disclose Dr. Lemke as its own expert witness is harmless.

Accordingly, based on Dr. Lemke's affidavit, Emhart has raised a genuine issue of material fact whether Lakin was negligent in guarding the Turner 149 to prevent injuries to the persons operating it.

## CONCLUSION

For these reasons, the Court denies Emhart's Motion for Summary Judgment and grants in part and denies in part Emhart's Motion to Strike. The Court also denies Lakin's Motion for Summary Judgment. Expert discovery is extended until January 27, 2006.

Dated: December 15, 2005

                                **ENTERED**

                                _____
                                **AMY J. ST. EVE**
                                **United States District Court Judge**